Our final case of the day is United States v. Mercado Berrios. Mr. Drysdale. Thank you, Your Honor. May it please the Court, Tom Drysdale from the Federal Defender's Office on behalf of the appellant, Rafael Mercado. There are two issues before the Court today, but the one I'd like to focus on here at oral argument is whether Mr. Mercado, an individual with no criminal history who was on an adults-only website messaging someone who said they were an adult, using pictures of an adult, should have received a jury instruction on entrapment. And as this Court is well aware, there are two elements to an entrapment defense, predisposition and government inducement. And as this Court has made very clear, particularly in United States v. Mayfield, entrapment is generally a question for the jury. So we start with the presumption that the jury is going to receive an entrapment instruction if Mr. Mercado can present, quote, some evidence that the government induced this and that he was not predisposed to commit this crime. And this Court specifically in Mayfield said that this initial burden of production is not great. So Mr. Mercado simply had to put forth some evidence that would allow a rational jury to reach this conclusion. And so I think that that's important today because the government's going to have to get up here and tell you that Mr. Mercado was not entrapped as a matter of law, that not any rational jury could have possibly found on this evidence that he was not predisposed to commit this crime and that they did not induce it. All we have to show is some evidence. So with that standard in mind, I'd like to look at inducement. And what Mayfield says government inducement is is government solicitation plus some other conduct that creates a risk that a person will commit a crime that they otherwise might not commit. And so Mayfield lists all of these factors that you can look at to see whether the government induced this crime, but it isn't exhaustive. It says, and any other conduct. So basically we look at the body of what the government is doing in this case. And looking at those Mayfield factors, we certainly have fraudulent misrepresentations here. The government lured Mr. Mercado with a picture of an adult. They listed this individual's age as 18. It sent additional pictures of an adult woman when Mr. Mercado says, I don't think you're real. They respond with pictures of an adult. So who is she? Is she this 15-year-old or is she the adult that they're showing him? And again, that's something that needs to be weighed by a jury. We have repeated attempts at persuasion. So Agent Carter, the FBI agent in this case, not Rafael Mercado, consistently escalated this encounter. Mr. Mercado says, I just want to hang out with you and watch Netflix and smoke marijuana. And specifically, he very clearly tells the undercover agent, I quote, didn't mean it that way, referring to the new understanding that the term Netflix and chill refers to sexual activity. And the FBI says in return, oh, I know what you meant. I know you didn't mean it like that. I'm telling you I want more than that. And Mr. Mercado then, the FBI says, do you want to have outdoor or indoor fun? And Mr. Mercado says, well, I want to play tennis, frisbee, go on nature hikes, go to conventions. The FBI says, I want different fun. And so, again, I'm not here telling this court that Rafael Mercado was definitely entrapped. Maybe he wasn't. But I am saying that there was certainly evidence that a rational jury could have reached the conclusion that the government induced this crime. Again, we looked. The FBI says. Do you put any weight at all, or maybe we're over on the predisposition side. I'm not sure. But one of the things the government says is it only took about four minutes into the text before he finds out that this person is allegedly 15. The problem is, Your Honor, they overlap. So we may be over into that side, but we're still on this side. Yes, it only takes about four minutes. But my response to that would be, well, that's four minutes that he thinks she's 18. And he doesn't respond with, you're only 15? Great. Awesome. That's not a problem. He responds with, oh, wow, you're young. Not, I'm excited that you're young, or that's exactly what I was looking for. So, again, yes, maybe the jury is going to sit down and they're going to say, well, he knew right away he wasn't entrapped. But then we look at all this other evidence that we have here. The FBI is saying the occurrence has to happen this weekend, and that's in the Drake case that we cite in our briefs. And, you know, I think the other factor that I want to point out is the government says that Mr. Mercado initiated this chat. He did. He did initiate this chat with someone that he thought was 18 years old. And there was evidence, as I recall it to you, Crawford, that he had actually had quite a few chats all with adults. The age range is 21 to 55 years old of the women he was messaging on this application. And so the other thing that I think is worth mentioning is that at the end of the day on the first chat, at 6 o'clock at night, Rafael Mercado walks away. Now, he does tell Agent Carter, message me later, but he walks away from the chat. You're saying some pretty explicit things. A hundred percent. But he does walk away. And so after two hours, more than two hours has gone by, here comes Agent Carter back to reinitiate the conversation. That's absolutely a factor. He said some explicit things. He certainly did. But maybe in that two and a half hours, he steps back and says, this was a really poor decision. I should not be doing this. The government didn't give him that opportunity. They left him on the hook, and they made sure he didn't get away. Agent Carter says that in the transcripts. We want to make sure we keep contact with this guy because he's not getting away from us, basically. So, again, these are all factors that a jury should be weighing in this case. And when we look at predisposition. Counsel, maybe I'm missing something. Was the jury precluded from weighing Mercado's contention that he thought the person on the other end of this chat to be an adult? No, certainly not, Your Honor. The line of argument you're making is really an argument that he's innocent. It doesn't seem to be an entrapment argument. That's not true. That's what confuses me. The argument we're making, Your Honor, is not that he's innocent because I do think that he, you know, if he was innocent, that is the argument that was presented at trial, I think, that he didn't know that she was that age. And the jury was allowed to weigh that. Correct. The judge didn't take that away from the jury. The judge didn't. That's why I'm confused. You're right, Your Honor. But the argument we're making here is once this conversation starts and we start looking at this conversation, you have Rafael Mercado saying, Let's watch Netflix. Let's go hiking. Let's go play Frisbee. And the government's saying, No, no, no, more, more, more. I want more. I want different. And so that is the question of inducement. You're essentially saying there's a layer in between. If guilty, he was entrapped. That's correct. That's absolutely what the argument is. Because there's a possibility if guilty, he wasn't entrapped. He was predisposed. The government didn't go beyond what it should do. Then there's a middle ground. If guilty, he wasn't trapped. And then he just didn't have the intent that would support a conviction. I completely agree, Your Honor. That's precisely what the position is. I'm into my rebuttal time, but just briefly on predisposition, the government doesn't even really make a sincere argument that he was predisposed to commit this crime. Zero criminal history, zero criminal history points. And the government engages in a weighing test in their brief that says, well, some of the factors favor Mercado, but some of the factors favor us. Well, that's the function of a jury. The jury should have been allowed to consider that because Mr. Mercado proffered evidence that he was not predisposed to commit this crime. And if there are no other questions, I will reserve what I have left for rebuttal. Thank you. Certainly, counsel. Ms. Boyle. Good morning, Your Honors. May it please the court, counsel. My name is Catherine Boyle on behalf of the United States. Your Honor, at first, I'd like to also focus on the entrapment issue in this case. And I believe defense counsel's characterization of this conversation, he's really whitewashed the beginning of the conversation in terms of what's happened here. Well, we can all read the conversation. We can see that he goes to meet me, that it's an 18 and older. Maybe not always. We understand that. But he thinks it's an 18-year-old at least, you know. And it's not until a few minutes in that the agent pops up with this, I'm really 15, you know, below 16, however the agent phrases it. Yes, Your Honor. As the FBI agent explained in this case, the reason the FBI conducts operations on adult-only sites is because minors are and have repeatedly been found on these sites. The government notes also that while Mr. Mercado may have believed, I'll refer to him as Alexis in shorthand, Alexis was 18 for a brief period of time. Within four minutes of the start of their text message conversation, she reveals her real age. In similar cases, when you look at Cawthon and Shin, where the federal agency introduces the younger or the purported younger age of the minor very quickly, typically inducement is not found on that basis when it happens in short order. But I guess let's focus a little bit. First of all, this is about jury instruction. It's not like would the jury have to rule in favor of Mr. Mercado. It's only about whether the jury could rule on this record. Secondly, the government's theory seems to be that it should be illegal even to text with somebody who is below the age of 18. There's really some content here, too. He finds out that this person is, he thinks, well, I'm not technically 18, LOL, I'm almost 16. Then a bunch of back and forth. And the agent is explaining why he's trying to do this. And for quite some time, Mr. Mercado keeps the conversation pretty clean. I mean, he eventually doesn't, but he, for quite some time, the agent's just pushing. Well, Your Honor, the government's contention is not that it's illegal for an adult to communicate with a minor. Our contention is that it's illegal for an adult to attempt to entice a minor. And in this case, when you really— And where does the enticement come in on the inducement? It's the agent who keeps saying, I want more, I want more, waiting to see if Mr. Mercado will pick up the suggestion. I think the district court was correct in describing the agent's comments as somewhat open-ended here. And when you look at what happens in this conversation, and this is one of the reasons this was appropriate not to go to a jury because the district court could look at everything that occurred. It's a plain transcript. You see Alexis saying she's 15, about four minutes into the first conversation, and Mr. Mercado's response in this case is not, oh, my gosh, we should end this conversation, or what are you going to talk to me? That's why you think he should have said that as opposed to continuing. He just says, you're pretty, you know, for that. He says something along those lines. He says, you have a great body. First he says, wow, oh, wow, you're young. Yes, Your Honor, and he follows that immediately. Within a minute of learning her age, telling her she has a great body for being only 16, and then saying, I'm not into gals my age. In my head I'm still 18, and I always will be. He says he's a kid at heart. He brings up taking drugs. He mentions the youth of his recent girlfriend. Then he says other things too. My recent girlfriend was 21. That's not a minor. I don't know. It takes a while. Well, Your Honor, if I may also, it's clear from these beginning comments that one of the reasons Mr. Mercado may be being a bit cagey is he asks her multiple questions within these first briefly in their meet-me conversation and then very quickly into this text conversation within the first 15 minutes. He's asking her questions about whether her profile could possibly be false. Oh, yeah. It's very clear here that one of the reasons he may be being a little bit circumspect, and not even that circumspect among all of these comments about how he's not into women his age, she has a great body. I mean, he thinks he's talking. Do you think it's irrelevant that he had all these chats with older women? Well, Your Honor, my understanding is there's no evidence he met up with any of the older women he chatted with. The person he went to meet up with here was the 15-year-old. I think that's pretty telling. But we don't know, do we? I mean, but he continues to chat with quite a few older women, again, all the way up to age 55. Certainly, but we're only aware of him arriving at one house with a bunch of alcohol and various other things planned for his sexual encounter. Because it's the only sting. I mean, you weren't following him on all these other things. Certainly, Your Honor. Certainly he may have been communicating with multiple people, but an attempted enticement of a minor would still be illegal even if the defendant was interested in a range of people in this case. And I think here, really, and I think we're sort of, as you mentioned earlier, the inducement and predisposition portions. The predisposition actually worries me more here. I think you have to show both at this point, that it's as a matter of law no inducement and as a matter of law no predisposition. Your Honor, I don't believe that's correct. It's an affirmative defense. I believe the defendant has to proffer some evidence on both points in order to succeed. So failure to show government inducement or failure to show some evidence of predisposition, both with doom and entrapment defense in this case, Your Honor. I'm very concerned about the predisposition part of this. I think one of the first points, Your Honor, if I may, for predisposition that you want to consider is you have the predisposition factors you can look at from Mayfield, but you can turn even more quickly to what Mr. Mercado himself is saying. He says, I'm not into women my age. He describes in literary terms this quest to find a young virgin. He leaves a lot of room. Certainly, but he does say he's 18 at heart, and he describes in literary terms his lifelong quest to find. Moby Dick, I know. Yes. Yes, Your Honor, exactly. So I think you can even start the predisposition analysis just looking at what Mr. Mercado himself is telling you within the four corners of these chats. And then you also can turn and look at his writing commission of the act in this case. You can look at his reactions to learning he's talking to a 15-year-old. Most 41-year-olds, I would certainly hope, who are speaking to a 15-year-old on a romantic app and then to be a text, don't tell them they have a great body when they find out the person's a minor. They don't tell them how they're interested in people who are younger than they are. It's a wildly inappropriate response, and I think it reveals a lot about Mr. Mercado's predisposition in this case. And you also want to consider whether you're only looking at one side of the evidence. I wouldn't ever say that on this record a jury couldn't rule in the government's favor. That's not the issue. The question is, could a jury look at all of this and rule in Mr. Mercado's favor? Your Honor, we don't believe a rational jury could look at the evidence in this case in the four corners of this chat, which really allowed the district court a unique window in terms of some of these types of cases into what's going on here. We don't believe that a rational jury could rule in favor of Mr. Mercado in this instance. It seems weird to me that a chat would be a unique opportunity. Since chats happen all the time, you probably have chat transcripts in a lot of these cases. I'm just noting that even prior to trial, the district court would be able to look without necessarily having additional witness evidence. They can see exactly what has happened between Mr. Mercado and the FBI agent, whom he believed was a 15-year-old. I would note, too, I think that Mr. Mercado is being a bit careful in these opening texts, but the courts have held that a defendant's concern that the 15-year-old might be a law enforcement officer is really evidence of criminal intent. It's not evidence that he didn't intend to go further with this. I think when you look at the repeated questions about whether this was a 15-year-old, whether the profile was real, and I think that when you examine, too, various forms of innuendo, Mr. Mercado is the one who brought up Netflix and chill, and he admitted that he knew what that meant, and that's important. Mr. Mercado is attempting to figure out exactly what's going on here because he is very interested in meeting up with this 15-year-old. If you look at their conversations throughout the week, one of his main points is, one of his biggest concerns here is not, oh, my gosh, should I meet up with somebody who's a minor? He asks her if she's a law enforcement officer. That is the backdrop to this entire thing. Your Honor, I see I'm running out of time, so I do want to, as a point of fact, correct one thing defense counsel mentioned. The first night of the encounter, when there was a two-hour break, Alexis was the one who signed off the chat, and then Mr. Mercado instructed her to reach back out later. She reached back out briefly, and then he reached back out four more times with no response, and he initiated every morning thereafter, Tuesday through Friday, the day that he actually arrived at the house. Your Honors, I see I'm out of time. If you have any further questions? Thank you, Your Honors. Thank you, Ms. Boyle. Anything further, Mr. Drysdale? Yes, Your Honor. So the government only cites two cases to this court where a jury instruction was denied, Cawthon and Shin. Neither of those cases use the standard that the Seventh Circuit announced in Mayfield for inducement. To be exact, both of those cases say that inducement is threatening or harassing conduct or psychologically manipulative conduct. That is not the standard that was announced in Mayfield. So neither of those two cases have a lot of relevance. What the government doesn't address is the six cases at page 20 of our brief of defendants who did get a jury instruction. I'm going to point this court to United States v. Melton, where the defendant posted an ad on Craigslist looking for a, quote, young teen who needs to be trained or has little experience and wants to be a daddy's girl. An agent responded offering up a 14-year-old girl, and the defendant expressed his desire to perform sex acts on that girl. That defendant got a jury instruction. So if that defendant gets a jury instruction, so does Rafael Mercado. And did we hold that that was legally necessary? What was legally necessary, Your Honor? That giving an entrapment instruction on those facts was legally necessary. That was not this court, Your Honor. But no, it was not held that it was legally necessary. You need to show that the instruction was legally essential rather than permissible. We need to show that we proffered some evidence on both prongs of entrapment, Your Honor, which is what we've done here. The government talks about Mr. Mercado's response to her age. Well, like I said earlier, it wasn't, well, great. The government talks about what the Netflix and chill comment was. He specifically said, I didn't mean it that way. This is evidence. This is a conversation that goes on in the jury room. This is some evidence of entrapment. He should have received an instruction, and this court should remand for a new trial. Thank you. Thank you very much. The case is taken under advisement, and the court will be in recess.